**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Patrick W. Loftus, Jr., Andrew S. Johnston, and J. Edward Norris, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 2:13-CV-00379-PMD |
| v. | ) ) | **ORDER** |
| Federal Deposit Insurance Corporation as Receiver for Plantation Federal Bank; Plantation Federal Bank Salary Continuation Agreement; Plantation Federal Bank Split Dollar Agreement; and Plantation Federal Bank, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on motion of Defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Plantation Federal Bank ("Bank"), to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also requests that the Court take judicial notice of six exhibits accompanying its Motion to Dismiss and Reply. For the reasons set forth herein, Defendant's Motion to Dismiss and Request for Judicial Notice is denied.

**BACKGROUND**

This action arises out of the FDIC's denial of benefits purportedly owed to Plaintiffs based on Plaintiffs' previous employment with the Bank. Accepting the truth of the allegations in Plaintiffs' Complaint and viewing all inferences in the light most favorable to Plaintiffs, *e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on Defendant's Motion to Dismiss, are as follows.

Chartered in 1986, Plantation Federal Bank was based in Pawley's Island, South Carolina. Plaintiffs are former executives of the Bank. Although Plaintiffs' responsibilities, roles, and titles apparently changed over the years, at the time the Bank was chartered, Plaintiff J. Edward Norris ("Norris") was the Bank's president and Plaintiff Patrick W. Loftus, Jr. ("Loftus") was the Bank's chief financial officer. Plaintiff Andrew S. Johnson ("Johnson") joined the Bank shortly after its founding as chief lending officer, vice president, and Pawley's Island market executive.

Plaintiffs claim that under their leadership and direction, the Bank expanded significantly, in terms of both its assets and its branch offices, and that the Bank remained profitable and well-capitalized. Plaintiffs allege that in 2002, the Bank implemented the Plantation Federal Bank Salary Continuation Agreement ("Salary Continuation Agreement") and the Plantation Federal Bank Split Dollar Agreement or Split Dollar Endorsement ("Split Dollar Agreement") (collectively "Agreements" or "Plan"). According to Plaintiffs, the Salary Continuation Agreement was intended to provide for the payment of a salary to Plaintiffs following their termination, and the Split Dollar Agreement was intended to provide Plaintiffs' designated beneficiaries with a benefit at the time of each Plaintiff's death. Specifically, Plaintiffs contend that the Plan was to provide annual benefits upon retirement to Plaintiff Johnson in the amount of $50,000 and Plaintiffs Loftus and Norris in the amount of $75,000. Additionally, Plaintiffs assert that the value of the Plan's benefits under the Split Dollar Agreement ranged from $550,000 to $800,000 after the Bank had received its allotted cash value and percentage of the death benefits. At the time the Bank implemented or executed the Agreements, Plaintiffs had been employed by the Bank for a period in excess of fifteen years.

Plaintiffs allege that, notwithstanding the success of the Bank during their tenure, the Bank's board of directors voted in 2006 to "embark on a new commercial banking strategy." In furtherance of this strategy, the board of directors employed a new management team to operate the Bank. According to Plaintiffs, the Bank's new management team acted to reduce or eliminate Plaintiffs' respective authority and management responsibilities. Nevertheless, Plaintiffs remained with the Bank following the 2006 transition, citing the benefits promised under the Agreements as the primary reason for doing so.

Plaintiffs allege that the Bank's financial stability and viability declined significantly under the direction of the new management team. Plaintiffs assert that, as a result of this decline, the Bank ultimately entered into a Supervisory Agreement with the Office of Thrift Supervision in 2009, and in 2010, the Bank was issued an Order to Cease and Desist from undertaking or participating in any unsound banking practices. On April 6, 2012, in accordance with the Supervisory Agreement, the Bank submitted an Application for Benefits to the Office the Comptroller of the Currency ("OCC") and the FDIC. The Application for Benefits requested that the OCC and FDIC terminate the Agreements and distribute the benefits according to the terms of the Agreements. The Bank subsequently failed, and the OCC placed the Bank in receivership and appointed the FDIC as its Receiver. On April 27, 2012, the FDIC accepted its appointment as the Bank's Receiver and proceeded to close the Bank and deny the Bank's request for termination of, and distribution pursuant to, the Agreements. Plaintiffs thereafter submitted individual claims to the FDIC, which were disallowed on December 13, 2012. Following the FDIC's rejection of their claims and repudiation of the Agreements, Plaintiffs instituted this action.

3

## PROCEDURAL HISTORY

On February 11, 2013, Plaintiffs filed the instant lawsuit alleging one cause of action for benefits, taxable costs, interest, and attorney's fees pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (g).  On June 12, 2013, Plaintiffs filed an Amended Complaint, adding a second cause of action for actual direct compensatory damages pursuant to the Financial Institutions Reform, Recovery Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(e)(3)(A).  Defendant subsequently filed its Motion to Dismiss and Request for Judicial Notice, accompanied by a Memorandum in Support, on August 15, 2013.  Specifically, Defendant moves to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Additionally, Defendant requests that the Court take judicial notice of five exhibits attached to the Memorandum in Support.  Plaintiffs filed a Response in Opposition on September 13, 2013, objecting to Defendant's request that the Court take judicial notice of certain exhibits and also maintaining that the Amended Complaint states a claim for relief under both causes of action sufficient to withstand Defendant's Motion to Dismiss.  Defendant thereafter filed a Reply on September 23, 2013, also requesting that the Court take judicial notice of a sixth exhibit.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (2006).  This matter is now ripe for consideration.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

4

defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court "articulated a 'two-pronged approach' to assessing the sufficiency of a complaint." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the complaint must "contain factual allegations in addition to legal conclusions." *Id.* Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, to state a facially plausible claim the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Nevertheless, under notice pleading, a complaint must simply provide the defendant with "fair notice" of the claim and the grounds upon which the plaintiff seeks to obtain relief. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. The court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation and internal quotation marks omitted)). Thus, although the court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

In addition to accepting the truth of all factual allegations, a court also "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may similarly consider documents or exhibits attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Therefore, while a court ordinarily may not consider extrinsic evidence in ruling on a motion to dismiss without converting the motion into one for summary judgment, certain documents and facts may

nevertheless be considered at the 12(b)(6) stage. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *Clark v. BASF Corp.*, 142 F. App'x 659, 660–61 (4th Cir. 2005). Any relevant facts or reasonable inferences still must be construed, along with the allegations of the complaint, in the light most favorable to the plaintiff. *Cf. Clatterbuck*, 708 F.3d at 557.

## **DISCUSSION**

Defendant moves to dismiss both causes of action contained in Plaintiffs' Amended Complaint. The Court will address the legal sufficiency of Plaintiffs' claims, as well as Defendant's arguments and objections thereto, *seriatim*. However, the Court will first consider Defendant's Request for Judicial Notice, as it relates to the instant Motion to Dismiss.

### I.     Judicial Notice

Defendant requests that the Court take judicial notice of six exhibits attached to its Motion to Dismiss and Reply. Specifically, Defendant asks the Court to notice the Split Dollar Agreement, Salary Continuation Agreement, Supervisory Agreement, Order to Cease and Desist, Application for Benefits, and Balance Sheet Summary. Although the Plaintiffs do not object to the Court taking judicial notice of three of the six documents,[1] the Court declines Defendant's request for the reasons that follow.

Under Rule 201 of the Federal Rules of Evidence, a trial court may take judicial notice of facts on its own accord and must take judicial notice of facts "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). A fact is appropriate for judicial notice if it is

---

1. Plaintiffs object to the Court taking judicial notice of the Supervisory Agreement and Order to Cease and Desist, "because they are not facts and because they are irrelevant to this Court's consideration of the FDIC's Motion to Dismiss." Defendant's request that the Court take judicial notice of the sixth exhibit, namely the Balance Sheet Summary, was submitted in its Reply. Therefore, Plaintiffs have not had the opportunity to respond or object to this additional request.

> not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b). Rule 201 applies only to adjudicative facts, which "are simply the facts of the particular case." Fed. R. Evid. 201(a) advisory committee note. Therefore, by definition, adjudicative facts must be relevant. *United States v. LaRouche*, 1993 WL 358525, at *4, 4 F.3d 987 (table) (4th Cir. Sept. 13, 1993) (per curiam) (citing 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104, at 483–84 (1977)). "Further, whether information is the proper subject of judicial notice depends on the use to which it is put." *Clatterbuck*, 708 F.3d at 558. The party requesting judicial notice of the particular fact bears the burden of proving that Rule 201's standard is satisfied. 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 2.3, at 344 (3d ed. 2007). Under Rule 201(d), a court may take judicial notice of a fact at any stage in the proceeding, even for the first time on appeal. *See* Fed. R. Evid. 201(f) advisory committee note.

The consequences of a court taking judicial notice are significant. Where the trial court has taken judicial notice of a fact in a civil matter, the judge must instruct the jury to accept that fact as conclusive. Fed. R. Evid. 201(g). A court taking judicial notice may also preclude the introduction of evidence to disprove the noticed fact. *See* Fed. R. Evid. 201(g) advisory committee note (discussing controversy surrounding whether evidence may be admitted to disprove facts judicially noticed). As stated in the Advisory Committee Notes to Rule 201, a "tradition of circumspection" surrounds judicial notice of adjudicative facts, and courts should exercise caution in taking judicial notice, doing so only when the matter is beyond reasonable controversy. Fed. R. Evid. 201(b) advisory committee note; *see In re Harmony Holdings, LLC*, 393 B.R. 409, 412–13 (Bankr. D.S.C. 2008).

Here, Defendant does not request that the Court merely take notice of certain facts that may be shown to be beyond reasonable dispute by the specific documents but instead asks that the Court take notice of the six documents in their entirety.  The Court finds that the documents submitted by the FDIC are extensive, and taking judicial notice of the exhibits in their entirety, as opposed to noticing particular statements contained therein, could yield unforeseen repercussions later in the litigation.  Moreover, Defendant has failed to satisfy its burden of demonstrating that each exhibit is relevant to the instant Motion or that Rule 201's standard is otherwise satisfied.  Finally, Plaintiffs have not had the opportunity to be heard with regard to all exhibits requested to be noticed.  Consequently, the Court concludes that judicially noticing the requested six exhibits in their entirety is inappropriate at this juncture, and that any finding to the contrary would be a departure from the cautious approach to which this Court is to adhere.

Additionally, the Court finds it unnecessary to take judicial notice of the exhibits presented by Defendant.  It is clear that a court may consider documents incorporated into a complaint by reference or attached to a motion to dismiss, provided they are integral to the plaintiff's claims and authentic, without converting the motion into one for summary judgment. *See Tellabs, Inc.*, 551 U.S. at 322; *Clatterbuck*, 708 F.3d at 557–58; *Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 467.  In this case, the Agreements are integral to the Plaintiffs' claims and their authenticity is not disputed.  Further, they were directly referenced in Plaintiffs' Amended Complaint and attached to Defendant's Motion to Dismiss.  Therefore, to the extent it is necessary to look to one or more relevant provisions of the Agreements in disposing of this Motion, the Court may properly consider these exhibits.[2] *Cf. In re Cardinal Health, Inc. ERISA*

---

2. Although some courts have arrived at a similar result by limiting the scope of the facts judicially noticed and taking notice only for the purpose of the motion before the court, *e.g.*, *Metro. Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F. Supp. 2d 1193, 1197 (E.D. Wash. 2006), in view of the strictures of Rule 201,

9

*Litig.*, 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) ("In considering a defendant's motion to dismiss, it is proper for the Court to take into account any relevant plan documents. Courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are 'based on rights under the plans which are controlled by the plans' provisions as described in the plan documents' and where the documents are 'incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.'" (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997))).

The Court declines to address the remaining exhibits Defendant asks the Court to notice, as "[o]n a motion pursuant to Rule 12(b)(6), the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it." *Clatterbuck*, 708 F.3d at 558. Accordingly, "[i]t is this task to which [the Court will] now return." *Id.*

## II.   ERISA

Defendant moves to dismiss Plaintiffs' first cause of action alleging violations of ERISA. Plaintiffs' Amended Complaint alleges that Defendant's denial of benefits was wrongful and unreasonable under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs therefore claim they are entitled to "an order declaring the existence of pension benefits under the [Agreements]; an order requiring Defendants to provide those benefits; an order granting Plaintiffs' reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. [§] 1132(g)(1); and for such other equitable relief as this Court deems just and proper." Pls.' Am. Compl. ¶ 60. Defendant moves to dismiss Plaintiffs' ERISA claim on the grounds that the Agreements do not constitute a qualified plan under ERISA but instead

---

and subsection (f) in particular, and the cautious approach that should be taken with regard to judicial notice more generally, the Court declines to adopt such an approach.

10

represent, as a matter of law, "an unfunded 'top hat' plan for a select group of executives under ERISA." Def.'s Reply 1. Assuming, *arguendo* and for purposes of this Motion, that the Plan is a "top hat" plan, Plaintiffs have nevertheless pleaded a plausible claim to relief under ERISA.

Plans colloquially referred to as top hat plans are considered a "'rare sub-species' of ERISA plans." *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006) (quoting *Senior Executive Benefit Plan Participants v. New Valley Corp.* (*In re New Valley Corp.*), 89 F.3d 143, 148 (3d Cir. 1996)). Although "[t]he principles governing whether a Plan qualifies as a top hat plan are not as well settled as those for other ERISA provisions," *id.*, ERISA generally requires that the plan be (1) "unfunded" and (2) "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," *id.* (quoting 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(10)). "Many ERISA rules and protections that apply to funded pension benefits plans, including detailed accrual, vesting, funding, and fiduciary responsibility regulations, do not apply to Top Hat plans." *Denzler v. Questech, Inc.*, 80 F.3d 97, 99 n.1 (4th Cir. 1996) (citing *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 935–37 (3d Cir. 1985), *overruled on other grounds*, *Pritzker v. Merrill Lynch*, 7 F.3d 1110 (3d Cir. 1993); *Kemmerer*, 842 F. Supp. at 141; *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1486 (N.D. Cal. 1993)). Indeed, as the FDIC contends, top hat plans are not qualified ERISA plans. *In re The Colonial BancGroup, Inc.*, 436 B.R. 695, 711 (Bankr. M.D. Ala. 2010). However, as noted by the Fourth Circuit, ERISA's enforcement provisions, set forth in 29 U.S.C. § 1132(a), still apply to top hat plans. *Id.* (citing *Barrowclough*, 752 F.2d at 935–37; *Kemmerer*, 842 F. Supp. at 141; *Carr*, 816 F. Supp. at 1486); *see also Guiragoss*, 444 F. Supp. 2d at 658 n.10 ("ERISA does not exempt top hat plans from compliance with reporting, disclosure, administration and enforcement provisions."). Thus, while top hat plans are exempt

11

from many of ERISA's substantive coverage requirements, they are still subject to ERISA's enforcement provisions. Accordingly, even assuming, as Defendant insists, that Plaintiffs' Amended Complaint and the Agreements "establish as a matter of law that the Plan is a 'top hat' plan under ERISA,"[3] Def.'s Reply 2, Plaintiffs have nevertheless pleaded a plausible cause of action under ERISA.

## III.    FIRREA

Defendant also moves to dismiss Plaintiffs' second cause of action seeking actual direct compensatory damages under FIRREA. Specifically, the Amended Complaint alleges that Plaintiffs submitted vested claims for benefits under 12 U.S.C. § 1821(d)(5), which were denied by the FDIC. Plaintiffs further allege that the FDIC repudiated the Agreements, thereby denying Plaintiffs the benefits to which they are entitled under the Plan. Therefore, Plaintiffs brought this second cause of action to recover said benefits as actual direct compensatory damages pursuant to FIRREA. Defendant now moves to dismiss Plaintiffs' cause of action, arguing that the FDIC's denial of Plaintiffs' claims was appropriate and that Plaintiffs' benefits were not vested at the time of the Bank's insolvency, such that they did not have a "provable," or unconditionally fixed and certain, claim.[4] The Court concludes that Plaintiffs have pleaded sufficient factual allegations to state a plausible claim for relief pursuant to FIRREA.

---

3.   Whether the Agreements constitute a top hat plan is a detailed, fact-specific inquiry, *see Guiragoss*, 444 F. Supp. 2d at 659–60, that is not best suited for conclusive determination at this stage of the litigation.

4.   The FDIC, in its Reply, also argues that because Plaintiffs seek to recover from a failed bank, FIRREA, specifically 12 U.S.C. § 1821(j), controls. Although the Fourth Circuit has embraced a broad reading of § 1821(j), *see Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1035 (4th Cir. 1994) (citing *In re Landmark Land Co.,* 973 F.2d 283 (4th Cir. 1992)), commonly referred to as FIRREA's anti-injunction provision, *e.g.*, *Elmco Properties, Inc. v. Second Nat. Federal Sav. Ass'n*, 94 F.3d 914, 923 (4th Cir. 1996), it has not interpreted § 1821(j) to restrain actions seeking actual direct compensatory damages. Therefore, because Plaintiffs are not seeking an injunction or other equitable remedy, § 1821(j) does not bar recovery. *See Goldstein v. F.D.I.C.*, CIV.A. ELH-11-1604, 2012 WL 1819284, at *10 (D. Md. May 16, 2012); *see also id.* at n.9 ("Courts uniformly have held that the preclusion of [§] 1821(j) does not affect a damages claim." (quoting *Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir. 1998)).

FIRREA authorizes the FDIC, when acting as a receiver or conservator of a financial institution, to disaffirm or repudiate contracts it deems burdensome, provided that the repudiation of the contract "will promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e)(1). Once a contract is repudiated, the FDIC's action "is treated as a breach of contract giving rise to an ordinary contract claim for damages." *WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 532 (4th Cir. 2000). FIRREA limits recoverable damages to "actual direct compensatory damages," which are "determined as of the date of the appointment of the . . . receiver," 12 U.S.C. § 1821(e)(3)(A), and expressly excludes "punitive or exemplary damages," "damages for lost profits or opportunity," or "damages for pain and suffering," *id.* § 1821(e)(3)(B).

Defendant urges the Court to interpret FIRREA to require that a bank's liability must have accrued and become *unconditionally* fixed on or before the date it is declared insolvent and a receiver is appointed. The FDIC contends that, bearing only contingent rights when the Bank was declared insolvent, Plaintiffs here cannot recover under or be compensated for benefits provided in the Plan. In support of its argument, the FDIC relies upon *Kennedy v. Boston-Continental National Bank*, 84 F.2d 592 (1st Cir. 1936), and *Dababneh v. FDIC*, 971 F.2d 428 (10th Cir. 1992), both of which involved claims for future rents under pre-FIRREA common law. Notably, the Parties have not cited, nor is the Court aware of, an opinion from the Fourth Circuit addressing this issue. *Cf. Erwin v. FDIC*, No. 10-CV-9467 (VB), 2012 WL 2864518, at 2–3 (S.D.N.Y. June 6, 2012) (discussing the disagreement among the courts of appeals, particularly as it pertains to severance payments).

As explained in *McMillian v. F.D.I.C.*, 81 F.3d 1041 (11th Cir. 1996), the future-rent cases cited by Defendant can be distinguished as having been based on a "new contract" theory,

precluding claims based on post-insolvency agreements. *See id.* at 1047–50; *see also First Empire v. FDIC*, 572 F.2d 1361, 1367 (9th Cir. 1978) ("Although these cases use broad language, indicating that the bank's liability on any claim must have accrued and be unconditionally fixed at the date of insolvency, they are, by virtue of their dependence on the 'new contract' principle, distinguishable from cases not dealing with lease options exercised after insolvency."). Therefore, the Court finds the FDIC's reliance on these cases, as support for the proposition that contingent rights existing prior to insolvency cannot form the basis of a valid claim against an insolvent financial institution in receivership, to be unpersuasive.

Adopting the approach and reasoning set forth in *McMillian*, the Court concludes for purposes of this Order that "[a] claim exists before insolvency if it is based on a pre-insolvency contract which requires payment upon a stated event." *McMillian*, 81 F.3d at 1047. According to the Eleventh Circuit, "[t]he fact that certain post-insolvency events affect liability under a pre-insolvency contract does not necessarily mean that the claim did not exist before insolvency. It is the contract right which must exist before insolvency, not the fully-matured obligation to pay." *Id.* (citations omitted). This interpretation is reinforced by language from the Supreme Court's opinion in *White v. Knox*, 111 U.S. 784 (1884), stating that "[t]he only claims the [receiver] can recognize in the settlement [of] the affairs of the bank are those which are shown by proof satisfactory to him or by the adjudication of a competent court to have had their origin in something done before the insolvency." *McMillian*, 81 F.3d at 1050 (quoting *White*, 111 U.S. at 787). The Eleventh Circuit's conclusion in *McMillian* is also supported by the D.C. Circuit's opinion in *Office & Professional Employees International Union, Local 2 v. FDIC ("OPEIU")*, 27 F.3d 598 (D.C. Cir. 1994) and the cases cited therein.

14

Analyzing the FDIC's arguments in *McMillian*, the Eleventh Circuit noted that "[i]t would make no sense to limit recovery under FIRREA to only those contracts in which all contingencies had been eliminated prior to appointment of the receiver," because "[a]ll contracts are to some extent contingent until both parties have performed or breached." *McMillian*, 81 F.3d at 1050. The Eleventh Circuit further stated that the FDIC's approach in *McMillian* would permit a claimant to recover only when the contract at issue was breached prior to receivership, a result the court found to be at odds with congressional intent and the plain language of FIRREA, as well as the common law. *Id.* Moreover, the court suggested that such an approach "would mean that things like health benefits and pension benefits would not be recoverable." *Id.*

In this matter, the contractual rights that gave rise to Plaintiffs' claims were created prior to the Bank's insolvency and the FDIC's appointment as Receiver. Although Plaintiffs' ability to recover under the Plan may have been contingent upon the occurrence of one or more events, the existence of a contingency did not necessarily destroy Plaintiffs' contract rights. Additionally, Plaintiffs have pleaded that the requisite contingencies were satisfied, as to at least one Plaintiff, prior to instituting this action. Accordingly, the Court concludes that Plaintiffs have pleaded sufficient factual allegations to state a plausible claim for relief under FIRREA.[5]

---

5.  While the Court recognizes that regulations promulgated around the time of, or since, the Eleventh Circuit's decision in *McMillian* may have altered the landscape with regard to the remedies sought by Plaintiffs, these arguments were not presented to the Court. Regardless, with the minimal evidence before the Court at this juncture, any attempt to apply such regulations to this case would be premature. Also, although Defendant insists that "[t]he unfunded nature of Plaintiffs' 'top hat' plan makes rights to payment of any benefits contingent on the solvency of the Bank and forfeitable (not vested)," having not determined that the Plan constitutes a top hat plan, the Court similarly finds this argument premature. Finally, in Reply, Defendant also argues that payment of the requested benefits would provide Plaintiffs with an improper preference over other creditors and that "[t]here is no evidence that the Receiver will ever have sufficient liquidated assets to pay any amount to the unsecured general creditors of the Bank." Defendant's argument falls short, as the purported inability of Plaintiffs to successfully recover any amount ultimately found to be owed to them does not, in and of itself, indicate that Plaintiffs have failed to state a facially plausible cause of action.

## CONCLUSION

Therefore, for the foregoing reasons, it is **ORDERED** that Defendant's Motion to Dismiss and Request for Judicial Notice is **DENIED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**October 28, 2013**
**Charleston, South Carolina**